---

**Fill in this information to identify the case:**

Debtor 1   RONNIE PETERSON

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Northern District Of Illinois

Case number  1707399

---

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents**; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

**1. Who is the current creditor?**

Wells Fargo Financial Illinois, Inc.
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Wells Fargo Bank, N.A.
Name

435 Ford Road, Suite 300
Number   Street

St. Louis Park        MN        55426-1063
City                   State        ZIP Code

Contact phone  1-866-429-7099

Contact email  wfdsmn@wellsfargo.com

Where should payments to the creditor be sent? (if different)

Wells Fargo Auto Finance
Name

PO Box 29706
Number   Street

Phoenix              AZ         85038-9706
City                  State        ZIP Code

Contact phone  1-866-429-7099

Contact email  wfdsmn@wellsfargo.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

WFCAUT1707399ILN47947191  __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____
                                                                      MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

---

PROOFOFCLAIM (03/2017)                                                        Rev. 12/15

Official Form 410                        Proof of Claim                        page 1

Debtor 1 RONNIE PETERSON _____ Case number (if known) 1707399
         First Name      Middle Name      Last Name

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**
☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 614513584 ____ ____

**7. How much is the claim?** $3,485.55*      . Does this amount include interest or other charges?
☐ No
☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

* Creditor reserves the right to amend its claim to seek a deficiency balance, if any, in the event creditor's collateral is liquidated.

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.
Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).
Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**
☐ No
☒ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☒ Motor vehicle
☐ Other. Describe: 2002 LINCOLN CONTINENTAL VIN# 1LNHM97V62Y651534

**Basis for perfection:** Lien
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $4,725.00
**Amount of the claim that is secured:** $3,485.55
**Amount of the claim that is unsecured:** $0.00   (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $3,485.55

**Annual Interest Rate** (when case was filed) 0.00 %
☒ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**
☒ No
☐ Yes. Identify the property: _____

Debtor 1   RONNIE PETERSON   Case number (if known) 1707399
         First Name   Middle Name   Last Name

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | |
|---|---|---|
| | ☐ Yes. Check one: | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $ |

* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☒ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   04/03/2017
                   MM / DD / YYYY

/s/ Evelyn Nehwah
Signature

**Print the name of the person who is completing and signing this claim:**

Name        Evelyn  Nehwah
            First name    Middle name    Last name

Title       Bankruptcy Specialist

Company     Wells Fargo Bank, N.A.
            Identify the corporate servicer as the company if the authorized agent is a servicer.

Address     Same as notice address listed above.
            Number     Street

            City                       State     ZIP Code

Contact phone _____         Email _____

PROOFOFCLAIM (03/2017)                                Rev. 12/15

Official Form 410        Proof of Claim        page 3

# Attachment A

# Wells Fargo Financial Illinois, Inc.

# (Auto Finance Division)

## PROOF OF CLAIM ACCOUNT SUMMARY STATEMENT

**BANKRUPTCY CASE INFORMATION**

Debtor(s): RONNIE PETERSON

Case No: 1707399

Uniform Claim Identifier: WFCAUT1707399ILN47947191

Chapter: 13

**ACCOUNT INFORMATION**

Account No: 7191

Account Type: Installment Loan

Open Date: N/A

Entity From Whom Creditor Purchased Account: N/A

Date of Last Transaction: N/A

Entity Owning Account on Last Transaction Date: N/A

Date of Last Payment: N/A

Date of Charge-off: N/A

Amount of Claim: $3,485.55

An itemization of the amount of interest, fees and costs included in the Amount of Claim is as follows:

| | | | |
|---|---|---|---|
| • Amount of Interest: | $ 0.00 | • Doc Fees: | $ N/A |
| • Rewards Fees: | $ N/A | • Taxes: | $ N/A |
| • Late Fees: | $ 0.00 | • Licensing Fees: | $ N/A |
| • Over Limit Fees: | $ N/A | • Repossession Fees: | $ 0.00 |
| • NSF Fees: | $ 0.00 | • Storage Fees: | $ 0.00 |
| • Annual Fees: | $ N/A | • Impound Fees: | $ 0.00 |
| • Attorney Fees: | $ 0.00 | • CPI (Insurance): | $ 0.00 |
| • Court Costs: | $ 0.00 | • CPI Interest: | $ N/A |
| • Overdraft Fees: | $ N/A | • Check by Phone Fees: | $ 0.00 |
| • Re-Deposit Fees: | $ N/A | • Collection Agency Fees: | $ 0.00 |
| • Cash Advance Fees: | $ N/A | • Credit Insurance: | $ N/A |
| • Payment Protection: | $ N/A | • Credit Defense: | $ N/A |
| • Title Fees: | $ 0.00 | • Miscellaneous: | $ 0.00 |

Amount Required to Cure Default: $3,485.55

Collateral Description: 2002 LINCOLN CONTINENTAL VIN# 1LNHM97V62Y651534

Post-Petition Payment Amount: $ (Nevada Only)

**RETAIL INSTALLMENT CONTRACT – MOTOR VEHICLE – SIMPLE INTEREST**

No. N/A

### FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Total Sale Price |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on credit, including your downpayment of $ 1600.00 |
| 21.75 % | $ 18641.23 | $ 22981.17 | $ 41622.40 | $ 43022.40 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 576.70 | monthly beginning 07/31/2005 |
| N/A | $ N/A | N/A |

Cash Price $ 23182.00
Less Cash Downpayment $ 1600.00
Value of Trade-in $ 11800.00
Lien Payoff $ 11800.00
To $ 0.00
Unpaid Balance of Cash Price $ 21682.00
Unpaid Balance Due on Trade-In $ N/A
Year, Make, Model of Buyer's Trade-In: 2001 CHEVROLET MONTE CARLO
(Paid to) N/A
*Insurance Companies:
N/A    $ N/A
N/A    $ N/A
N/A    $ N/A
Public Officials (Licenses, Title & Taxes) $ 1143.78
*To DOC FEE $ 55.39
*To N/A $ N/A
*To N/A $ N/A

Security: You are giving a security interest in the goods being purchased and in any moneys, credits or other property of yours in the possession of the Assignee, on deposit or otherwise.

Late Charge: If any payment is ten (10) days late, you will be charged: i) 5% of the installment if the installment is in excess of $200.00, or ii) $10.00 if the installment is for $200.00 or less.

Prepayment: You have the right to prepay the unpaid balance in full or in part at anytime without penalty.
See your contract terms below and on the reverse side for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment refunds and penalties and further information about security interests.

Buyer(s) RONNIE PETERSON (Name) (Residence Address) (City) (State) (Zip)
Buyer(s) N/A (Name) (Residence Address) (City) (State) (Zip)
Seller WATSON MOTORSPORT 3934 W. 147TH ST. MIDLOTHIAN IL 60445

Seller hereby sells and Buyer or Buyers, jointly and severally, hereby purchase the following motor vehicle with accessories and equipment thereon for the deferred payment price and on the terms set forth in this contract. Buyer acknowledges delivery and acceptance of said motor vehicle in good condition.

| New or Used | Year | Make of Vehicle | Model | Body Style | No. Cyl. | Serial Number | Body Color | Top Color | Key No. |
|---|---|---|---|---|---|---|---|---|---|
| USED | 2002 | LINCOLN | CONTINEN | 4 DOOR SED | 8 | 1LNHM97V62Y651534 | WHITE | LTHR ROOF | |

Buyer Promises to pay to the order of Seller at the offices of: Wells Fargo Financial (Assignee) located in Lexington PA, Illinois

the Amount Financed shown above together with a Finance Charge on the principal balance of the Amount Financed from time to time unpaid at the rate of 21.75 %
per annum from date until maturity in 71 installments of $ 576.70 each and a final installment of $ 576.70, beginning on
JULY 31st, 2005 and continuing on the same day of each successive month thereafter until fully paid. All payments shall be applied first to accrued Finance Charge and the balance to principal. The Finance Charge has been computed on the scheduled unpaid balances of the Amount Financed on the assumption that all scheduled installments will be paid when due. Guarantor, if any, guarantees collection of all amounts due under this contract upon failure of the Seller to collect from the Buyer named herein.

SECURITY INTERESTS: [remaining small-print contract terms]

Dated: JUNE 16th, 2005

Seller: WATSON MOTORSPORT
By: [signature]   N/A (Title)
Guarantor: N/A

Buyer: [signature] Ronnie Peterson
Buyer: N/A

Copyright 2004 ILLIANA FINANCIAL, INC., Elmhurst, IL and ILLINOIS BANKERS ASSOCIATION, Chicago, IL (All Rights Reserved)
ORIGINAL
Form IF1-25 (Rev. 9/04)

## ADDITIONAL AGREEMENTS OF BUYER

1. Waiver of any default in the payment of any installment of the total of payments when due shall not operate as a waiver of any subsequent default. No extension of the time of payment or any other modification of the terms of this contract shall be binding on holder unless written consent thereto is given by an executive officer or holder. This contract shall be binding upon and inure to the benefit of the parties, their heirs, personal representatives, successors and assigns.

2. Buyer agrees to keep said motor vehicle fully insured against loss by fire, theft and collision for the entire term of this contract in companies acceptable to holder. Holder is authorized to purchase all insurance included in this contract. Insurance coverages, other than required insurance, have been voluntarily contracted for by Buyer. Buyer may elect to purchase any required insurance from an insurance company, agent or broker of his own choice. If Buyer so elects, he shall furnish Seller with a policy or binder issued by a company acceptable to Seller on or before taking possession of the motor vehicle, and inclusion of Buyer's premiums in this contract is optional with Seller. All policies procured by Buyer shall provide that loss, if any, shall be payable to Buyer and to the holder of this contract, as their respective interest may appear and a clause requiring Insurer to give the holder 10 days written notice of cancellation. In the event of the failure of Buyer to insure said motor vehicle or to deliver a fully paid policy to holder at the times and in the manner herein provided, or in the event of cancellation or expiration of any policy during the term of this contract, such failure shall constitute an event of default hereunder. Holder shall have the option, but shall not be required, to procure such insurance for Buyer and to advance the premium therefor. Buyer hereby promises to pay any such premium with finance charge thereon at the annual percentage rate stated on the reverse side hereof as an additional indebtedness due hereunder. Buyer hereby assigns to holder the proceeds of all insurance on said motor vehicle including unearned premium refunds. In the event of default by Buyer hereunder, holder is authorized to cancel such insurance, receive and receipt for unearned premiums and to endorse any check or draft therefor made payable to Buyer. Any unearned premium received by the holder shall be credited to the final maturing installments of this contract except to the extent applied toward payment for similar insurance protecting the interest of Buyer and the holder, or either of them.

3. COLLATERAL PROTECTION INSURANCE. Unless you provide us with evidence of the insurance coverage required by your agreement with us, we may purchase insurance at your expense to protect our interests in your collateral. This insurance may, but need not, protect your interests. The coverage that we purchase may not pay any claim that you make or any claim that is made against you in connection with the collateral. You may later cancel any insurance purchased by us, but only after providing us with evidence that you have obtained insurance as required by our agreement. If we purchase insurance for the collateral, you will be responsible for the costs of that insurance, including interest and any other charges we may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to your total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance you may be able to obtain on your own.

4. Buyer shall not use or permit said motor vehicle to be used in violation of any law or ordinance, State, Federal, or Municipal. Buyer shall not sell, lease, encumber or place said motor vehicle in any other person's possession or remove it from the State of Illinois without the written consent of the holder of this contract. Buyer shall not use said motor vehicle for hire or as a taxi. Buyer shall keep said motor vehicle free from all mechanic's liens, tax liens and all other liens.

5. Upon the occurrence of any event of default, the holder of this contract shall have the rights and remedies provided by Article 9 of the Illinois Uniform Commercial Code including, but not by way of limitation, the rights of the holder (a) to take immediate possession of the motor vehicle, with or without judicial process, and for such purpose, to enter upon the premises where it may be located; and (b) to give Buyer reasonable notice of the time and place of any public sale thereof or of the time after which any private sale or other intended disposition thereof is to be made; and (c) to dispose of the motor vehicle at public or private sale in accordance with said notice to Buyer and to buy at a public sale; and (d) to apply the proceeds of sale first to the reasonable expenses of retaking, holding, preparing for sale and selling and to reasonable attorneys' fees and legal expenses incurred by holder, and second, to satisfaction of Buyer's indebtedness hereon, and third, to satisfaction of any subordinate security interest in the motor vehicle if demand therefor be received by holder before disposition of the proceeds, and to account to Buyer for any surplus remaining. Buyer shall be liable for any deficiency. If the Buyer has paid an amount equal to 30% or more of the deferred payment price at the time of repossession, the Buyer may, within 21 days, redeem the collateral from the holder by tendering (a) the total of all unpaid amounts, including any unpaid delinquency or deferral charges due at the time of tender, without acceleration, and (b) performance necessary to cure any default other than nonpayment of the amounts due; and (c) any reasonable cost or fees incurred by the holder in the retaking of the goods. Tender of payment and performance in this manner restores to the Buyer his rights under the contract as though no default had occurred. The Buyer has a right to redeem the collateral from the holder only once in this manner. At any time before disposition of the motor vehicle as provided herein, Buyer may redeem it by paying holder all indebtedness secured hereby as well as expenses reasonably incurred by holder in retaking, holding, preparing the motor vehicle for sale, arranging for the sale and reasonable attorneys' fees and legal expenses. It is expressly agreed by Buyer that the requirements of reasonable notice shall be met if notice is mailed to Buyer at the address of Buyer shown herein not less than 10 days prior to the sale or other disposition. All rights and remedies of the holder, whether provided for in this contract or conferred by law, are cumulative.

6. Holder is authorized to apply any payment made by Buyer hereon to any other indebtedness of Buyer to holder, whether arising under the contract or otherwise.

7. Buyer agrees that holder, in retaking said motor vehicle as herein provided, may take possession of personal effects and property found therein and hold the same for delivery to Buyer.

8. Buyer agrees that if delivery of the motor vehicle is not made at the time of execution of this contract, the identifying number or marks and the due date of the first installment may be inserted by Seller in Seller's counterpart of the contract after it has been signed by Buyer.

9. If any provision of this contract is held invalid, the invalidity shall not affect the remaining provisions thereof.

## "NOTICE OF POSSIBLE REFUND OF CREDIT LIFE OR DISABILITY INSURANCE PREMIUM

(1) IF YOU HAVE PURCHASED EITHER CREDIT LIFE OR CREDIT DISABILITY INSURANCE, OR BOTH, TO GUARANTEE PAYMENTS BEING MADE IN CASE OF YOUR DEATH OR DISABILITY, ON YOUR VEHICLE PURCHASED UNDER AN INSTALLMENT SALES CONTRACT, YOU MAY BE ENTITLED TO A PARTIAL REFUND OF YOUR PREMIUM IF YOU PAY OFF YOUR INSTALLMENT LOAN EARLY; (2) IN CASE OF EARLY COMPLETE PAYMENT OF YOUR LOAN, YOU SHOULD CONTACT THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE TO SEE IF A REFUND IS DUE. IF YOUR VEHICLE DEALER FINANCED YOUR LOAN, THE SELLER OF YOUR CREDIT LIFE OR CREDIT DISABILITY INSURANCE IS YOUR VEHICLE DEALER.

### ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby sells, assigns and transfers to _Wells Fargo Financial Acceptance_ _____ _Ensington, PA_

(Name of Assignee)          (Address of Assignee)

ASSIGNEE, its successors and assigns, all of Seller's right, title and interest in and to the within contract and the motor vehicle described therein. To induce Assignee to purchase said contract, Seller represents and warrants to Assignee (1) that the within contract is valid and genuine and correctly states the terms of the retail installment transaction between Seller and Buyer; (2) that the motor vehicle described has been delivered to and accepted by the Buyer; (3) that the down payment was paid in full, in cash or in trade, and that no part was loaned to Buyer by Seller; (4) that Seller had good title to and the right to sell said motor vehicle to Buyer and that the motor vehicle is free of all liens, claims and encumbrances; (5) that no notice of any defense or right of action has been received by Seller from nor has Seller any knowledge of any fact that would impair the validity of the contract; (6) that Seller has the right to sell and assign this contract to Assignee; (7) that all buyers have legal capacity to contract; (8) that on the date of the contract Seller executed and delivered to each Buyer a completed copy of the contract and to the Guarantor a completed copy of the contract and Explanation of Guarantor's Obligation; (9) Seller has complied with all requirements of the Federal Truth in Lending Act, Regulation Z, the Federal Equal Credit Opportunity Act and the Illinois Motor Vehicle Retail Installment Sales Act and the regulations of all governmental agencies; (10) that on the date of the contract, Seller assigned to Buyer the Manufacturer's Statement of Origin or the existing Certificate of Title, as the case may be, issued covering said motor vehicle, procured from Buyer a signed application for a new certificate of title to be issued to Buyer and mailed to Assignee showing correctly the date of the within contract, the name and address of Assignee as holder of the first lien on the motor vehicle and the amount of said lien and caused to be delivered to the Secretary of State of Illinois all of the documents described with the prescribed fee; (11) that the motor vehicle has not been used as a taxi or for hire or for commercial transportation or for unlawful purposes. If any of the foregoing representations and warranties is breached, (Seller agrees to repurchase the within contract for the unpaid balance and all other indebtedness then due from Buyer thereon, together with reasonable attorneys' fees, costs and expenses incurred by Assignee.

Dated: _6-12-05_            _Watson Motorsport_ Seller

By: _____ Title

Authorized Signature

### REPURCHASE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller agrees, in the event a claim or defense is asserted against Assignee by the Buyer at any time, Seller shall, on demand, repurchase the within contract for cash at a price equal to the net amount remaining unpaid on said contract; and Seller shall indemnify and hold Assignee harmless from any and all liabilities that may result at any time from any claim asserted by Buyer for recovery of amounts paid arising out of any promise, representation or warranty made by Seller or the Manufacturer to Buyer.

Dated: _____ Seller

By: _____ Title

Authorized Signature

### FULL RECOURSE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations to set forth in the above assignment, Seller unconditionally guarantees prompt and full payment by Buyer of the Total of Payments and all other amounts due from Buyer under the within contract. If Buyer shall fail to pay any installment when due, Seller agrees to pay to Assignee, on demand, the full amount remaining unpaid on said contract. Seller agrees that it shall not be necessary for Assignee to proceed first against Buyer or to have recourse to the motor vehicle before proceeding to enforce this agreement. Extension of the time of payment or variation of terms effected by Assignee with Buyer shall not release Seller from his obligation hereunder.

Dated: _____ Seller

By: _____ Title

Authorized Signature

### LIMITED REPURCHASE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller agrees, in the event that Assignee repossesses the motor vehicle described in the within contract on account of default by Buyer and delivers the same to Seller, Seller shall, on demand, repurchase said motor vehicle for cash at a price equal to the amount remaining unpaid on said contract plus all costs and expenses, including attorneys' fees, incurred by Assignee by reason of Buyer's default or in connection with repossession and delivery of the motor vehicle. This repurchase agreement shall remain in effect until Buyer has paid _____ full installments of the Total of Payments. Extension of the time of payment or variation of terms effected with the Buyer shall not release Seller from his obligation hereunder.

Dated: _____ Seller

By: _____ Title

Authorized Signature

### LIMITED GUARANTEE AGREEMENT (Execute Assignment Also)

In Addition to Seller's obligations set forth in the above assignment, Seller unconditionally guarantees that, in the event of default by the Buyer in the full payment of any installment of the within contract when due, Seller will pay to Assignee, on demand, the unpaid balance then due on the contract up to the limit of $ _____. This guarantee shall terminate after Buyer has paid _____ full scheduled installments on the Total of Payments. Extension of the times of payment or variation of terms effected by Assignee with Buyer shall not release Seller from his obligation hereunder.

Dated: _____ Seller

By: _____ Title

Authorized Signature

# STATE OF ILLINOIS
## CERTIFICATE OF TITLE OF A VEHICLE

| VEHICLE IDENTIFICATION NO | YEAR | MAKE | MODEL | BODY STYLE | TITLE NO |
|---|---|---|---|---|---|
| 1LNHM97V62Y651534 | 2002 | LINCOLN | CONTINENTAL | 4 DOOR | X5228608481 |

| DATE ISSUED | ODOMETER | CCM | PURCHASED | PURCHASE DATE |
|---|---|---|---|---|
| 08/18/05 | 35789 |  | USED | 08/18/05 |

MOBILE HOME SQ FT

TYPE OF TITLE
ORIGINAL

MAILING ADDRESS

WELLS FARGO FINANCE ACPT IL INC
PO BOX 250
ESSINGTON PA 19029

LEGEND(S)

OWNER(S) NAME AND ADDRESS
RONNIE PETERSON

ACTUAL MILEAGE

FIRST LIENHOLDER NAME AND ADDRESS
WELLS FARGO FINANCE ACPT IL INC
PO BOX 250
ESSINGTON PA 19029

SECOND LIENHOLDER NAME AND ADDRESS

### RELEASE OF LIEN
The holder of Lien on the vehicle described in this Certificate does hereby state that the lien is released and discharged

Firm Name _____  By _____ Signature of Authorized Agent _____ Date _____
Firm Name _____  By _____ Signature of Authorized Agent _____ Date _____

**NEW LIEN ASSIGNMENT:** The information below must be on an application for title and presented to the Secretary of State

Secured Party _____ Address _____

► Federal and State law requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment

### ASSIGNMENT OF TITLE
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked

ODOMETER READING [NO TENTHS]
☐ 1 The mileage stated is in excess of its mechanical limits
☐ 2 The odometer reading is not the actual mileage
**WARNING-ODOMETER DISCREPANCY**

If this vehicle is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 33 1/3% of its fair market value unless this document is accompanied by a salvage application

Signature(s) of Seller(s) _____
Printed Name(s) of Seller(s) _____ DATE OF SALE _____
"I am aware of the above odometer certification made by seller
Signature(s) of Buyer(s) _____ Printed Name _____

I Jesse White Secretary of State of the State of Illinois do hereby certify that according to the records on file with my Office the person or entity named hereon is the owner of the vehicle described hereon which is subject to the above named liens and encumbrances if any IN WITNESS WHEREOF I HAVE AFFIXED MY SIGNATURE AND THE GREAT SEAL OF THE STATE OF ILLINOIS AT SPRINGFIELD

D39208873
CONTROL NO

*Jesse White*
JESSE WHITE Secretary of State

**DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS**



3/14/2017

**NADA Used Cars/Trucks**

**Wells Fargo Auto Finance (Bankruptcy)**

435 Ford Road
Suite 300
St. Louis Park, MN 55426
952-746-4883
crystal.pederson@wellsfargo.com

## Vehicle Information

| | |
|---|---|
| Vehicle: | 2002 Lincoln Continental Sedan 4D 4.6L V8 |
| Region: | Central |
| Period: | March 14, 2017 |
| VIN: | 1LNHM97V62Y651534 |
| Mileage: | 120,000 |
| Base MSRP: | $37,760 |
| Typically Equipped MSRP: | N/A |
| Weight: | 3,895 |

## NADA Used Cars/Trucks Values

| Auction* | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Low | N/A | N/A | N/A | **N/A** |
| Average | N/A | N/A | N/A | **N/A** |
| High | N/A | N/A | N/A | **N/A** |
| Trade-In | | | | |
| Rough | $600 | $950 | N/A | **$1,550** |
| Average | $1,300 | $950 | N/A | **$2,250** |
| Clean | $1,925 | $950 | N/A | **$2,875** |
| | | | | |
| Clean Loan | $1,750 | $950 | N/A | **$2,700** |
| Clean Retail | $3,775 | $950 | N/A | **$4,725** |

*The auction values displayed include typical equipment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

NADA Used Car Guide assumes no responsibility or liability for any errors or omissions or any revisions or additions made by anyone on this report.
NADA Used Car Guide and its logo are registered trademarks of National Automobile Dealers Association, used under license by J.D. Power and Associates.

```
Page: 1 Document Name: VAL

        S140 POLN      LOAN PAYOFF                       03-14 10:56:03  03/14
ASSOC 1   APPL IL    BANK 959   BRANCH 0459   PRODUCT DFLT  VIEW 99       PAGE 1
PETERSON RONNIE      LN TYPE 3    EFF DT       HOLD  RCVY B
                   PAYOFF BALANCES          CURRENT BALANCES     EFFECTIVE DTE ADJ
TOT PRINCIPAL       3,485.55                 3,485.55
TOT INTEREST             .00                      .00                        .00
TOT INSURANCE            .00                      .00                        .00
TOT DEALER REB           .00                      .00                        .00
TOT LATE FEES            .00                      .00
TOT OTHER CHGS           .00                      .00
TOT MISC FEES            .00                      .00
TOT ESCROW SHORT         .00                      .00
TOT EXTN FEES            .00                      .00
TOT TERM FEES            .00                      .00
TOT ADVANCE FEES         .00                      .00                        .00
TOT PAYOFF REBATE        .00                      .00
                   -----------
TOT PAYOFF          3,485.55            GOOD THRU 03/09/17    ADJ DAYS     5-
TOT OL PRIN              .00
TOT OL OTH               .00            TOT CUR PERDIEM                 .00000

CUSTOMER 1157191 LOAN 0001 DATE 0309172 PART            LOG N TYPE
====>                09=STLN  10=TRAC           12=STPS

Date: 3/14/2017 Time: 10:56:31 AM
```

Model Plan  
11/22/2013

Trustee: ☐ Marshall ☐ Meyer  
☐ Stearns ☐ Vaughn

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS

**In re:**                              ) Case No.  
                                        )  
**Ronnie Peterson**                     )  
                                        )  
                   **Debtors.**         ) Original Chapter 13 Plan, dated March 9, 2017

☐ A check in this box indicates that the plan contains special provisions, set out in Section G. Otherwise, the plan includes no provisions deviating from the model plan adopted by the court at the time of the filing of this case.

**Section A.**  
*Budget items*

1. As stated in the debtor's Schedule I and J, (a) the number of persons in the debtor's household is **4**; (b) their ages are **_, 6, 21, 24**; (c) total household monthly income is $ **2,372.30**; and (d) total monthly household expenses are $ **2,275.30**, leaving $ **97.00** available monthly for plan payments.

2. The debtor's Schedule J includes $ **N/A** for charitable contributions; the debtor represents that the debtor made substantially similar contributions for **N/A** months prior to filing this case.

**Section B.**  
*General items*

1. The debtor assumes all unexpired leases and executory contracts listed in Section G of this plan; all other unexpired leases and executory contracts are rejected. Both assumption and rejection are effective as of the date of plan confirmation.

2. Claims secured by a mortgage on real property of the debtor, set out in Section C or in Paragraph 2 of Section E of this plan, shall be treated as follows:

(a) *Prepetition defaults.* If the debtor pays the cure amount specified in Paragraph 5 of Section E, while timely making all required postpetition payments, the mortgage will be reinstated according to its original terms, extinguishing any right of the mortgagee to recover any amount alleged to have arisen prior to the filing of the petition.

(b) *Costs of collection.* Costs of collection, including attorneys' fees, incurred by the holder after the filing of this bankruptcy case and before the final payment of the cure amount specified in Paragraph 5 of Section E may be added to that cure amount pursuant to order of the court on motion of the holder.

3. The holder of any claim secured by a lien on property of the estate, other than a mortgage treated in Section C or in Paragraph 2 of Section E, shall retain the lien until the earlier of (a) payment of the underlying debt determined under nonbankruptcy law, or (b) discharge under 11 U.S.C. § 1328, at which time the lien shall terminate and be released by the creditor.

4. The debtor shall retain records, including all receipts, of all charitable donations listed in Schedule J.

1

| | |
|---|---|
| **Section C.**<br>**Direct**<br>**payment of**<br>**claims by**<br>**debtor** | ■ The debtor will make no direct payments to creditors holding prepetition claims. /or/<br>☐ The debtor will make current monthly payments, as listed in the debtor's Schedule J--increased or decreased as necessary to reflect changes in variable interest rates, escrow requirements, collection costs, or similar matters--directly to the following creditors holding claims secured by a mortgage on the debtor's real property:<br>Creditor: -NONE-                    , monthly payment, $ |
| **Section D.**<br>**Payments**<br>**by debtor**<br>**to the**<br>**trustee;**<br>**plan term**<br>**and**<br>**completion** | 1. *Initial plan term.* The debtor will pay to the trustee $ **97.00** monthly for **60** months [and $ monthly for an additional months], for total payments, during the initial plan term, of $ **5,820.00**. [Enter this amount on Line 1 of Section H.]<br><br>2. *Adjustments to initial term.* If the amount paid by the debtor to the trustee during the initial plan term does not permit payment of general unsecured claims as specified in Paragraphs 8 and 9 of Section E, then the debtor shall make additional monthly payments, during the maximum plan term allowed by law, sufficient to permit the specified payments.<br><br>3. *Plan completion.* ☐ The plan will conclude before the end of the initial term, as adjusted by Paragraph 2, only at such time as all allowed claims are paid in full, with any interest required by the plan /or/<br>■ The plan will conclude before the end of the initial term at any time that the debtor pays to the trustee the full amounts specified in Paragraphs 1 and 2. |
| **Section E.**<br>**Disburse-**<br>**ments by**<br>**the trustee** | The trustee shall disburse payments received from the debtor under this plan as follows:<br><br>1. *Trustee's fees.* Payable monthly, as authorized; estimated at **4.60**% of plan payments; and during the initial plan term, totaling $ **267.60**. [Enter this amount on Line 2a of Section H.]<br><br>2. *Current mortgage payments.* Payable according to the terms of the mortgage, as set forth below, beginning with the first payment due after the filing of the case. Each of these payments shall be increased or decreased by the trustee as necessary to reflect changes in variable interest rates, escrow requirements, or similar matters; the trustee shall make the change in payments as soon as practicable after receipt of a notice of the change issued by the mortgage holder, but no later than 14 days after such receipt. The trustee shall notify the debtor of any such change at least 7 days before putting the change into effect. Any current mortgage payment made by the debtor directly to the mortgagee shall be deducted from the amounts due to be paid to the trustee under this plan.<br><br>-NONE-<br><br>The total of all current mortgage payments to be made by the trustee under the plan is estimated to be $ **0.00**. [Enter this amount on Line 2b of Section H.]<br><br>3.1. *Other secured claims secured by value in collateral.* All secured claims, other than mortgage claims treated above and claims treated in Paragraph 3.2, are to be paid in full during the plan term, with interest at an annual percentage rates and in the fixed monthly amounts specified below regardless of contrary proofs of claim (subject to reduction with the consent of the creditor):<br><br>-NONE- |

2

[All claims in the debtor's Schedule D, other than mortgages treated above and claims for which the collateral has no value, must be listed in this paragraph.]

The total of all payments on these secured claims, including interest, is estimated to be $ __0.00__ . [Enter this amount on Line 2c of Section H.]

3.2 *Other secured claims treated as unsecured.* The following claims are secured by collateral that either has no value or that is fully encumbered by liens with higher priority. No payment will be made on these claims on account of their secured status, but to the extent that the claims are allowed, they will be paid as unsecured claims, pursuant to Paragraphs 6 and 8 of this section.
**-NONE-**

4. *Priority claims of debtor's attorney.* Payable in amounts allowed by court order. The total claim of debtor's attorney is estimated to be $ __3,500.00__ . [Enter this amount on Line 2d of Section H.]

5. *Mortgage arrears.* Payable as set forth below, regardless of contrary proofs of claim, except that the arrears payable may be reduced either with the consent of the mortgagee or by court order, entered on motion of the debtor with notice to the trustee and the mortgagee. Any such reduction shall be effective 14 days after either the trustee's receipt of a notice of reduction consented to by the mortgagee or the entry of a court order reducing the arrearage.
**-NONE-**

6. *Allowed priority claims other than those of the debtor's attorney.* Payable in full, without interest, on a pro rata basis. The total of all payments on non-attorney priority claims to be made by the trustee under the plan is estimated to be $ __0.00__ . [Enter this amount on Line 2f of Section H.] Any claim for which the proof of claim asserts both secured and priority status, but which is not identified as secured in Paragraphs 2, 3.1, or 3.2 of this section, will be treated under this paragraph to the extent that the claim is allowed as priority claim.

7. *Specially classified unsecured claim.* A special class consisting of the following non-priority unsecured claim: __-NONE-__ shall be paid at __N/A__ % of the allowed amount. The total of all payments to this special class is estimated to be $ __N/A__ . [Enter this amount on Line 2g of Section H.]

Reason for the special class: __N/A__ .

8. *General unsecured claims (GUCs).* All allowed nonpriority unsecured claims, not specially classified, including unsecured deficiency claims under 11 U.S.C. § 506(a), shall be paid, pro rata, ☐ in full, /or/ ■ to the extent possible from the payments set out in Section D, but not less than __10__ % of their allowed amount. [Enter minimum payment percentage on Line 4b of Section H.] Any claim for which the proof of claim asserts secured status, but which is not identified as secured in section C, or Paragraphs 2, 3.1, 3.2 or 5 of this section, will be treated under this paragraph to the extent that the claim is allowed without priority.

9. *Interest.* ■ Interest shall not be paid on unsecured claims /or/ ☐ interest shall be paid on unsecured claims, including priority and specially classified claims, at an annual percentage rate of __N/A__ % [Complete Line 4d of Section H to reflect interest payable.]

3

| | | |
|---|---|---|
| **Section F.** *Priority* | The trustee shall pay the amounts specified in Section E of this Plan in the following order of priority, with claims in a given level of priority reduced proportionately in the event of insufficient plan payments: (1) trustee's fee; (2) current mortgage payments; (3) secured claims listed in Section E, Paragraph 3.1; (4) priority claims of the debtor's attorney; (5) mortgage arrears; (6) priority claims other than those of the debtor's attorney; (7) specially classified non-priority unsecured claims; and (8) general unsecured claims. | |
| **Section G.** *Special terms* | Notwithstanding anything to the contrary set forth above, this Plan shall include the provisions set forth in the box following the signatures. The provisions will not be effective unless there is a check in the notice box preceding Section A. | |

**Section H.**
*Summary of payments to and from the trustee*

(1) Total payments from the debtor to the Chapter 13 trustee (subject to Paragraph 2 of Section D)     $     5,820.00

(2) Estimated disbursements by the trustee for non-GUCs (general unsecured claims):
    (a) Trustee's fees     $     267.60
    (b) Current mortgage payments     $     0.00
    (c) Payments of other allowed secured claims     $     0.00
    (d) Priority payments to debtor's attorney     $     3,500.00
    (e) Payments of mortgage arrears     $     0.00
    (f) Payments of non-attorney priority claims     $     0.00
    (g) Payments of specially classified unsecured claims     $     0.00
    (h) Total *[add Lines 2a through 2g]*     $     3,767.60

(3) Estimated payments available for GUCs and interest during initial plan term *[subtract Line 2h from Line 1]*     $     2,052.40

(4) Estimated payments required after initial plan term:
    (a) Estimated total GUCs, including unsecured deficiency claims under § 506(a)     $     20,520.00
    (b) Minimum GUC payment percentage     10 %
    (c) Estimated minimum GUC payment *[multiply line 4a by line 4b]*     $     2,052.00
    (d) Estimated interest payments on unsecured claims     $     0.00
    (e) Total of GUC and interest payments *[add Lines 4c and 4d]*     $     2,052.00
    (f) Payments available during initial term *[enter Line 3]*     $     2,052.40
    (g) Additional payments required *[subtract Line 4f from Line 4e]*     $     -0.40

(5) Additional payments available:
    (a) Debtor's monthly payment less trustee's fees and current mortgage payments made by the trustee     $     N/A
    (b) Months in maximum plan term after initial term     N/A
    (c) Payments available *[multiply line 5a by line 5b]*     $     N/A

| | |
|---|---|
| **Section I.** *Payroll Control* | ☐ A check in this box indicates that the debtor consents to immediate entry of an order directing the debtor's employer to deduct from the debtor's wages the amount specified in Paragraph 1 of Section D and to pay that amount to the trustee on the debtor's behalf. If this is a joint case, details of the deductions from each spouse's wages are set out in Section G. |

**Signatures**  Debtor(s) [Sign only if not represented by an attorney]

_____    _____    Date _____

          **Debtor's Attorney**     /s/ Bennie W Fernandez                         Date  March 9, 2017

*Attorney Information (name, address, telephone, etc.)*

```
Bennie W Fernandez
Fernandez & Associates
108 Madison
Oak Park, IL 60302
708-386-1812
Fax: 708-386-2014
```

**Special Terms** *[as provided in Paragraph G]*

[ ]

5